UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| AICHA QTYAB, | * |
| | * |
| Plaintiff, | * |
| | * |
| v. | *   Civil Action No. 15-cv-13335-ADB |
| | * |
| CAROLYN W. COLVIN, | * |
| Acting Commissioner of Social Security, | * |
| | * |
| Defendant. | * |

MEMORANDUM AND ORDER

July 12, 2016

BURROUGHS, D.J.

Plaintiff Aicha Qtyab ("Ms. Qtyab") brings this action pursuant to Section 205(g) of the Social Security Act, 42 U.S.C. § 405(g), seeking judicial review of a decision of the Commissioner of the Social Security Administration (the "Commissioner") denying her claim for Supplemental Security Income ("SSI") benefits. Before the Court is Ms. Qtyab's Motion for an Order Reversing the Commissioner's Decision, [ECF No. 11], and Defendant's Motion for an Order Affirming the Decision of the Commissioner. [ECF No. 15]. At issue is whether the residual functional capacity assessed by the Administrative Law Judge ("ALJ") was supported by substantial evidence. For all the reasons described below, this Court finds that both the residual functional capacity and the ALJ's ultimate disability determination were supported by substantial evidence. Therefore, the plaintiff's motion to reverse is DENIED, and the defendant's motion to affirm is ALLOWED.

**I.  Background**

Ms. Qtyab is a 43-year-old immigrant from Morocco with no formal education. [Tr. 33, 55, 320].[1] She is divorced and lives with her teenage son in Malden, Massachusetts. [Tr. 35]. She worked as a dishwasher and food preparation worker from October 1, 2008 through March 1, 2011, and has been unemployed since then. [Tr. 146].

Ms. Qtyab applied for SSI on September 11, 2012, claiming that she had been disabled since December 31, 2010 due to depression and fatigue. [Tr. 55]. Her claim was initially denied on December 5, 2012, and was denied upon reconsideration on July 23, 2013. [Tr. 75-77, 82-84]. Thereafter, Ms. Qtyab requested and was granted a hearing, which took place on March 18, 2014 before ALJ Constance Carter. [Tr. 25-54]. At the hearing, Ms. Qtyab was represented by counsel and testified with the aid of an Arabic interpreter. [Tr. 25]. Ruth Baruch, an impartial vocational expert, also testified. Id. On March 28, 2014, ALJ Carter issued an opinion denying Ms. Qtyab's claim for SSI benefits. [Tr. 12-20]. She found that from September 11, 2012, the date Ms. Qtyab's SSI application was filed, through the date of her decision, Ms. Qtyab "ha[d] not been under a disability." [Tr. 20].

In reaching her decision that Ms. Qtyab was not disabled, the ALJ performed the five-step sequential evaluation required by 20 C.F.R. § 416.920. The procedure resulted in the following analysis, which is detailed further in the ALJ's "Findings of Fact and Conclusions of Law." [Tr. 14-20].

First, under step one of the five-step inquiry, the ALJ determined that Ms. Qtyab had not engaged in substantial gainful work activity since September 11, 2012. [Tr. 14]. The ALJ then

---

[1] References to pages in the transcript of the record proceedings are cited as "Tr. __." The transcript of the administrative hearing, conducted on March 18, 2014, begins at Tr. 25. The ALJ's decision, dated March 28, 2014, begins at Tr. 12.

proceeded to step two, under which the ALJ determines if the claimant has a "severe impairment," meaning an "impairment or combination of impairments which significantly limits [her] physical or mental ability to do basic work activities." 20 C.F.R. § 416.920(c). The ALJ found that based on Ms. Qtyab's mental health treatment records dating back to 2009, Ms. Qtyab suffered from a severe mood disorder. [Tr. 14]. The ALJ, however, rejected Ms. Qtyab's claim that she had severe physical impairments,[2] and therefore only proceeded to step three with respect to Ms. Qtyab's claimed mental impairment.

At step three, the ALJ evaluates whether the claimant has an impairment equivalent to a specific listed impairment contained in Appendix 1 of the Social Security regulations. See Seavey v. Barnhart, 276 F.3d 1, 5 (1st Cir. 2001); 20 C.F.R. § 416.920(a)(4)(iii). Here, the ALJ found that the claimant's mental impairment did not meet or medically equal the criteria of listing 12.04, for affective disorders. [Tr. 15-16]. To establish a disability under listing 12.04, a claimant must either (1) satisfy the "paragraph A" and "paragraph B" criteria; or (2) satisfy the "paragraph C" criteria." 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.04. The ALJ determined that because Ms. Qtyab's impairments did not satisfy the "paragraph B"[3] or "paragraph C"[4] criteria, she did not meet or medically equal the criteria of listing 12.04.

---

[2] Ms. Qtyab had alleged a physical disability secondary to back pain and headaches, but the ALJ found that "the medical evidence of record does not establish that these impairments cause more than slight functional limitations . . . ." [Tr. 14].

[3] Under "paragraph B" of listing 12.04, the claimant must show that her mental impairments cause at least two of the following: marked restriction of activities of daily living; marked difficulties in maintaining social functioning; marked difficulties in maintaining concentration, persistence or pace; or repeated episodes of decompensation, each of extended duration. 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.04. The ALJ determined that Ms. Qtyab's mental impairment did not cause any marked impairments or repeated episodes of decompensation. [Tr. 15-16].

[4] Under "paragraph C" of listing 12.04, the claimant must show that she has a "[m]edically documented history of a chronic affective disorder of at least 2 years' duration that has caused more than a minimal limitation of ability to do basic work activities . . . and one of the following:

At the fourth step, the ALJ asks whether "the applicant's 'residual functional capacity' is such that he or she can still perform past relevant work." Seavey, 276 F.3d at 5. If the claimant is capable of performing her past relevant work, then she is not disabled, and the ALJ need not proceed to step five. 20 C.F.R. § 416.920(a)(4)(v). Before proceeding to step four, the ALJ must determine the claimant's residual functional capacity ("RFC"). The RFC assesses "the most [the claimant] can do despite [her] limitations." 20 C.F.R. § 416.945(a)(1). "The claimant has the burden of providing evidence to establish how her impairments limit her RFC." Puleio v. Colvin, No. 14-11750-FDS, 2015 WL 5722731, at *11 (D. Mass. Sept. 29, 2015). Here, based on the entire record, the ALJ found that Ms. Qtyab:

> [H]as the residual functional capacity to perform work at all exertional levels involving simple, routine tasks; involving occasional decision making; occasional changes in the work setting; involving no interaction with the general public; and work around co-workers, but only occasional interaction with co-workers.

[Tr. 16]. Relying on testimony from the vocational expert, the ALJ concluded that a person with this RFC could perform Ms. Qtyab's past relevant work as a dishwasher/cook helper. [Tr. 20]. She found that "[i]n comparing the claimant's residual functional capacity with the physical and mental demands of this [past relevant] work . . . the claimant is able to perform it as actually and generally performed." Id. Accordingly, the ALJ concluded that Ms. Qtyab was not disabled.[5]

---

1. Repeated episodes of decompensation, each of extended duration; or 2. A residual disease process that has resulted in such marginal adjustment that even a minimal increase in mental demands or change in the environment would be predicted to cause the individual to decompensate; or 3. Current history of 1 or more years' inability to function outside a highly supportive living arrangement, with an indication of continued need for such an arrangement." 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.04. The ALJ determined that Ms. Qtyab did not have a medically documented history of a chronic affected disorder causing more than a minimal limitation on her ability to perform basic work activities. [Tr. 16].

[5] The ALJ did not proceed to step 5, under which the Commissioner has the burden "of coming forward with evidence of specific jobs in the national economy that the applicant can still perform," Seavey, 276 F.3d at 5, because step four was dispositive.

In her motion to reverse the Commissioner's decision, Ms. Qtyab only challenges step four of the ALJ's analysis. She claims that the ALJ's RFC determination and her finding that Ms. Qtyab could perform her past relevant work were not supported by substantial evidence. [ECF No. 12 at 5-8].

## II.   Legal Standard

This Court has jurisdiction to review decisions of the Commissioner pursuant to Section 205(g) of the Social Security Act. 42 U.S.C. § 405(g). Section 205(g) provides that an individual may obtain judicial review of a final decision of the Commissioner by instituting a civil action in federal district court. Id. Under sentence four of Section 205(g), the court has the power "to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner . . . with or without remanding the cause for a rehearing." Id. A court's decision under sentence four, however, can be based only on a review of the administrative record of proceedings before the Commissioner. See Whitzell v. Astrue, 792 F. Supp. 2d 143, 147 (D. Mass. 2011) (citing 42 U.S.C. § 405(g)). If a claimant presents new evidence to the court that was not contained within the administrative record, the court may not consider it. "If additional evidence is to be considered, it must be by way of remand[]" pursuant to sentence six of Section 205(g). Hamilton v. Sec'y of Health & Human Servs., 961 F.2d 1495, 1503 (10th Cir. 1992); 42 U.S.C. § 405(g) ("The court may . . . at any time order additional evidence to be taken before the Commissioner . . . but only upon a showing that there is new evidence which is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding . . . .").

The Court reviews the Commissioner's factual findings to determine if they are supported by substantial evidence. See 42 U.S.C. § 405(g) ("The findings of the Commissioner of Social

Security as to any fact, if supported by substantial evidence, shall be conclusive . . . ."); see also Hagan v. Colvin, 52 F. Supp. 3d 167, 173 (D. Mass. 2014) ("This Court's authority to review an ALJ's decision is limited: the Court may only set aside the decision if it resulted from legal error or if the ALJ's factual findings were not supported by substantial evidence."). Substantial evidence means "'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Richardson v. Perales, 402 U.S. 389, 401 (1971) (quoting Consolidated Edison Co. v. NLRB, 305 U.S. 197, 229 (1938)); see also Hagan, 52 F. Supp. at 173 ("The court must uphold the ALJ's determination even if the record arguably could justify a different conclusion, so long as it is supported by substantial evidence.") (citation omitted).

### III.   Discussion

Having reviewed the administrative record before the ALJ, the Court finds that the ALJ's step four analysis was supported by substantial evidence, and that there was substantial evidence to support the ALJ's RFC assessment as well as her subsequent finding that Ms. Qtyab could perform her past relevant work. The ALJ reasonably concluded that Ms. Qtyab's statements concerning her impairments and their impact on her ability to work were not credible, and that based on the evidence in the record, Ms. Qtyab was capable of performing work consistent with the RFC.

Ms. Qtyab was diagnosed with depression as early as 2008. [Tr. 262]. Since then, numerous doctors and therapists have treated her depression. On September 13, 2012, two days after Ms. Qtyab filed her SSI application, her long-time primary care physician, Dr. Khaled Mustafa, stated that Ms. Qtyab had been seeing him for depression for over a year and that she was being treated with Citalopram and Trazodone. [Tr. 258]. On February 28, 2013, Ms.

Deborah Seiberg, LMHC, opined that Ms. Qtyab had exhibited signs of depression as of October 27, 2011. [Tr. 473]. In March 2014, Dr. Vautrain Abigail stated that Ms. Qtyab had major depressive disorder. [Tr. 547]. Based on the treatment notes in the record, Ms. Qtyab's depression appears to be linked to her difficult childhood and abusive marriage. [Tr. 320-321, 412, 441, 461].

The ALJ did not question these depression diagnoses. Rather, she found that the claimant's statements concerning the intensity, persistence and limiting effects of the symptoms resulting from the depression were not credible. The claimant claimed that she was unable to work in any capacity as a result of the depression, but the ALJ found that this was not supported by the record. Among other things, the ALJ relied on a questionnaire submitted by Ms. Qtyab in connection with her SSI application, in which she stated that she cooked and cleaned for her then 12 year-old son, went grocery shopping regularly, took public transportation, and talked to her friends and kids weekly. [Tr. 178-185]. Further, Ms. Qtyab testified at the hearing that she had been going to three-hour ESL classes five days a week for the past three years [Tr. 33-34], and Ms. Qtyab's 2013 treatment notes state that she was volunteering at her mosque [Tr. 509], tutoring beginning ESL students weekly [Tr. 513], and babysitting her granddaughter twice-a-week. [Tr. 517]. Based on the foregoing evidence, which is explained in detail in the ALJ's decision, the ALJ reasonably discounted Ms. Qtyab's claims regarding the limitations imposed by her mental impairment. As required, the ALJ made "specific findings as to the relevant evidence [s]he considered in determining to disbelieve the appellant," Da Rosa v. Sec'y of Health & Human Servs., 803 F.2d 24, 26 (1st Cir. 1986), and her decision to not credit Ms. Qtyab was supported by substantial evidence. See Frustaglia v. Sec'y of Health & Human Servs., 829 F.2d 192, 195 (1st Cir. 1987) ("The credibility determination by the ALJ, who observed the

7

claimant, evaluated his demeanor, and considered how that testimony fit in with the rest of the evidence, is entitled to deference, especially when supported by specific findings.").

In her motion to reverse the Commissioner's decision, Ms. Qtyab contends that the ALJ ignored the "episodic nature" of her depression. According to Ms. Qtyab, even if her symptoms are typically mild, she should have been found disabled because her symptoms are occasionally debilitating. [ECF No. 12 at 6]. Ms. Qtyab's argument mischaracterizes the ALJ's decision and is not supported by the record. First, the ALJ did consider the episodic nature of Ms. Qtyab's depression, noting that she has "periodic periods of situational depression, often relating to family stress." [Tr. 18]. The ALJ subsequently listed specific situations when this had occurred. Id. Second, Ms. Qtyab has not explained how these occasional depressive episodes would affect the RFC or the ALJ's ultimate step four finding. Ms. Qtyab notes that the vocational expert testified that an individual who is off task 20 percent of the day or who misses more than two unscheduled days per month would be likely to lose their job. [ECF No. 12 at 4]. Ms. Qtyab, however, has not presented any evidence that her situational depression would create such significant limitations. See Freeman v. Barnhart, 274 F.3d 606, 608 (1st Cir. 2001) ("The applicant has the burden of production and proof at the first four steps of the process.").[6]

---

[6] The Court agrees with the claimant that in certain instances, an episodic condition, in which the claimant has "better days and worse days," can constitute a disability. [See ECF No. 12 at 6-7 (citing Mace v. Comm'r, Soc. Sec. Admin., 605 F. App'x 837, 843 (11th Cir. 2015) ("A person who has a chronic disease, whether physical or psychiatric, and is under continuous treatment for it with heavy drugs, is likely to have better days and worse days; that is true of the plaintiff in this case. Suppose that half the time she is well enough that she could work, and half the time she is not. Then she could not hold down a full-time job."); Larson v. Astrue, 615 F.3d 744, 751 (7th Cir. 2010) (noting that symptoms that "wax and wane" are not inconsistent with a diagnosis of recurrent, major depression)]. As explained, however, the ALJ did consider the episodic nature of Qtyab's depression. Furthermore, Qtyab has not presented evidence that her episodes are so frequent or disabling as to render her disabled or to call into question the ALJ's RFC finding.

Ms. Qtyab also challenges the ALJ's use of GAF scores; she claims that the "ALJ's comments at [the] hearing suggest[ed] that a high GAF score at one point in Ms. Qtyab's records would bar a decision that Ms. Qtyab is disabled," and that "[t]his line of thinking is incorrect." [ECF No. 12 at 6]. Regardless of what was said at the hearing, the ALJ did not improperly credit Ms. Qtyab's GAF scores in her decision. First, the ALJ did not rely on a single high GAF score, as Ms. Qtyab suggests—Ms. Qtyab had a GAF score of 65 in 2011, 62 in 2012, and 74 in 2013 [Tr. 312, 320, 502].[7] Moreover, Ms. Qtyab's GAF scores were only one of several factors considered by the ALJ to determine Ms. Qtyab's functional limitations. Even if the ALJ had disregarded the GAF scores altogether, there would have been substantial evidence to support the ALJ's step four finding.

Ultimately, "[t]he claimant has the burden of proof through step four of the analysis," Navedo v. Colvin, No. 15-CV-30051-KAR, 2016 WL 3029943, at *3 (D. Mass. May 25, 2016), and Ms. Qtyab has not met her burden of showing that she had limitations in excess of the ALJ's RFC or that she was incapable of performing her past relevant work. Based on the record evidence described above and in more detail in the ALJ's opinion, the ALJ's step four finding was supported by substantial evidence. Under the substantial evidence standard, the court "must uphold the [Commissioner's] findings . . . if a reasonable mind, reviewing the record as a whole, could accept it as adequate to support his conclusion." Lizotte v. Sec'y of Health & Human Servs., 654 F.2d 127, 128 (1st Cir. 1981) (quoting Rodriguez v. Sec'y of Health & Human Servs., 647 F.2d 218, 222 (1st Cir. 1981)). The record as a whole, including contemporaneous

---

[7] "A GAF score in the 61–70 range indicates that one has some mild symptoms or some difficulty in social, occupational or school functioning, but generally functions pretty well and has some meaningful relationships." Stanley v. Colvin, No. CIV.A.11-10027-DJC, 2014 WL 1281451, at *5 (D. Mass. Mar. 28, 2014).

treatments notes and Ms. Qtyab's statements prior to and at the hearing, supports the ALJ's finding that, despite her depression, Ms. Qtyab is capable of performing work consistent with the RFC. A reasonable mind reviewing the record, which includes numerous examples of Ms. Qtyab regularly engaging in social and/or mentally taxing activities, could find that Ms. Qtyab's mental impairment, though severe, causes only moderate limitations. By limiting Ms. Qtyab to simple, routine tasks, and including only occasional interaction with co-workers and no interaction with the public, the RFC reasonably accounted for the limitations caused by Ms. Qtyab's mental impairment. Moreover, the ALJ accurately incorporated these limitations into her hypothetical question to the vocational expert [Tr. 51], and reasonably relied on the vocational expert's testimony that a person with such limitations could perform Ms. Qtyab's past relevant work as a dishwasher/cook helper. [Tr. 20]. See Perez v. Sec'y of Health & Human Servs., 958 F.2d 445, 447 (1st Cir. 1991) (noting that where a hypothetical is supported by substantial evidence, "the ALJ [is] entitled to rely on the vocational expert's testimony. . ."). Accordingly, the ALJ's decision to deny Ms. Qtyab's benefits because she is capable of performing her past relevant work was appropriate and is affirmed.

**IV.   Conclusion**

For the foregoing reasons, Ms. Qtyab's motion to reverse [ECF No. 11] is DENIED, and the Commissioner's motion to affirm [ECF No. 15] is ALLOWED.

**So Ordered.**

Dated: July 12, 2016

/s/ Allison D. Burroughs
ALLISON D. BURROUGHS
U.S. DISTRICT COURT JUDGE